**CITY OF WACO, Appellant,**

v.

**Alice L. HAYNES, Appellee.**

**No. 5746.**

Court of Civil Appeals of Texas, Waco.

Feb. 16, 1978.

Rehearing Denied March 9, 1978.

For Concurring Opinion see, 564 S.W.2d 388.

Jerry P. Campbell, Naman, Howell, Smith, Lee & Muldrow, Waco, for appellant.

J. Robert Sheehy and Robert A. Watson, Sheehy, Lovelace & Mayfield, Waco, for appellee.

## OPINION

JAMES, Justice.

This is a slip and fall case. Plaintiff-Appellee Mrs. Alice Haynes brought this suit against the City of Waco, Appellant herein, for damages for personal injuries growing out of a fall when she tripped upon a crack in the sidewalk immediately outside the main entrance of the Sul Ross Recreation Center, which is owned and operated by the City, as she was leaving a Senior Citizens' function. Trial was had to a jury which resulted in a verdict favorable to Plaintiff-Appellee Mrs. Haynes. Pursuant to and in harmony with the jury verdict, the trial court entered judgment in favor of Mrs. Haynes against the City in the amount of $15,000.00 and costs, from which the City appeals. We affirm.

In answer to special issues the jury found:

(1) The sidewalk where Plaintiff fell was in a defective condition at the time and on the occasion in question, "defective condition" having been defined as "such a condition that a reasonably prudent person could have foreseen that injury could likely result to the pedestrians using same if such condition was not corrected."

(2) That such defective condition was a proximate cause of Plaintiff's injuries.

(3) The City was making a special use of the sidewalk in question at the time and on the occasion in question. "Special use" was defined as "the use of the sidewalk in question by the City of Waco for ingress and egress to the property in question by a specific group of users other than usual pedestrian traffic normal for sidewalks."

(4) The sidewalk where Plaintiff fell was not in a good and safe condition at the time and on the occasion in question;

(5) In failing to keep said sidewalk in a good and safe condition the City was negligent;

(6) Which was a proximate cause of Plaintiff's injuries.

(7) The sidewalk where Plaintiff fell had cracked and one side of the crack was higher than the other;

(8) The Plaintiff caught the heel of her shoe on the crack causing her to fall;

(9) A reasonably prudent man would not have permitted the crack in the sidewalk to continue without repair because it was likely to produce hurt;

(10) Such condition had existed a sufficient length of time prior to Plaintiff's fall that the City, or its agents and employees, in the exercise of ordinary care, discovered or should have discovered such condition and should have repaired the same.

(11) Failure of the City to repair the sidewalk prior to Plaintiff's fall was negligence;

(12) Which was a proximate cause of Plaintiff's injuries.

(13) The jury failed to find that Plaintiff Mrs. Haynes failed to keep a proper lookout.

(14) No answer to proximate cause issue conditionally submitted.

(15) No answer to the comparative negligence issue which was submitted upon the condition that the negligence of more than one person proximately caused the occurrence in question.

(16) In answer to the damage issue inquiring as to Plaintiff's past and future pain and suffering, the jury answered, "none."

(17) Plaintiff's past medical expenses were found to be $2345.00;

(18) Plaintiff's future medical expenses were found to be $12,655.00.

Based upon the jury verdict, the trial court entered judgment in favor of Plaintiff Mrs. Haynes against the City for $15,000.00 and costs, from which the City appeals.

Defendant-Appellant's points of error are:

(1) Plaintiff-Appellee should be charged in law with notice, knowledge and appreciation of the condition of the sidewalk in question; that is to say, that the condition of the sidewalk was open and obvious.

(2) The defect in question was trivial as a matter of law.

(3) The definition of "defective condition" as used in connection with Special Issue No. 1 was improper and imposed a greater burden of proof upon the Defendant-Appellant than required by law.

(4) The definition of "special use" as used in connection with Special Issue No. 3 is improper because it does not follow the City ordinance in question and imposes a greater burden on Appellant than required by law.

(5) Special Issues Numbers 4 and 7 were merely repetitious of Special Issue No. 1.

After having carefully considered all of Appellant's points and contentions, we overrule same as being without merit and affirm the trial court's judgment.

We revert to Appellant's first point, to wit, to the effect that the defective condition of the sidewalk was open and obvious, and therefore that Plaintiff was charged in law with notice, knowledge, and appreciation of such defective condition. We do not agree.

On September 6, 1973, Mrs. Haynes tripped upon a crack in the sidewalk immediately outside the main entrance of the Sul Ross Recreation Center, which is owned and operated by the City of Waco, as she was leaving a Senior Citizens' function. She was 61 years old at the time of this occurrence, and she and her husband had been active participants in the Senior Citizens' program conducted by the City at said Center. There were about 250 members in this program, ranging in age from 50 to 92 years old. The program's activities consisted of dances, bingo parties, birthday parties, luncheons, and arts and crafts activities. Through newspaper advertisements the City invited senior citizens to attend the meetings at this Recreation Center.

Mr. and Mrs. Haynes had been going to this Recreation Center and had been members of this Senior Citizens Club for over a year before this accident. Her husband, Woodrow Haynes, had served as president of the organization, and Mrs. Haynes as vice president. There were two doors on the side of the building where she fell, and she usually went in the door other than the one which she used on the occurrence in question. Sometimes she would go in and out of the door where the accident occurred one or two times a week, but she testified that she had never noticed the crack in the sidewalk before, or at the time she fell. She testified, and it was undisputed, that she saw the crack in the sidewalk for the first time about a month or two after the fall. Her description of the crack was that it was not "real wide or real narrow" and there was an offset created by one side of the crack being lower than the other. She did not know how deep the crack was.

The door that Mrs. Haynes came out of at the time of the accident was a flush panel type, that is, no glass to see through. The doorknob was on her left as she went out of the building. She was carrying in her right arm a shoe box containing a chess set that she had made. Mrs. Pansy Partin went out the door just ahead of her. There are three steps down from the door threshold leading to the sidewalk which runs alongside this building. The sidewalk is about four feet wide, and the crack runs across the width of the sidewalk, located a little to the right of the center of the door as you stand in the street and face the door from the outside. Mrs. Haynes' car was parked a short distance to her right as she came out the door. She was on her way back to her car, and as

she stepped down the three steps to the sidewalk, the heel of the shoe of her right foot caught in the crack in the sidewalk. This caused her to lose her balance, throw the shoe box over her head, and fall on both knees, but mostly her right one, thereby bringing about the substantial personal injuries for which she sued. There were no handrails along the steps and no warnings of any kind.

Mr. Haynes testified that he had not noticed the crack before his wife fell.

Miss Johnnie Cabaniss, an employee of the City who served as Assistant Director of the Senior Citizens program at the time of Mrs. Haynes' fall, testified there were about 250 members in said program, and most of them were much older than 50. This was the most active program at the Center. She said the employees at the Recreation Center recognized that senior citizens were not of good eyesight and could not walk as steadily as younger people. With reference to the crack in question, Miss Cabaniss testified that the difference between the two sides of the crack was of sufficient size for a person to catch his heel on, and there was some short grass growing in the crack. She knew of no attempts by the City to fix the crack during the year prior to the fall. She said to her knowledge that crack had been there about the same way for some period of time prior to Mrs. Haynes' fall. Miss Cabaniss had been employed by the City at the Recreation Center about a year before Mrs. Haynes fell.

Mrs. Pansy Partin, a member of the Senior Citizens Club who was walking just ahead of Mrs. Haynes at the time of the accident, testified that Mrs. Haynes was wearing a "normal walking shoe" on the day she fell. Mrs. Partin knew the crack had been there for several months, and had previously seen someone else, a younger person, fall on this crack.

Mrs. Elva Ruth Dooley, who was recreation supervisor at the Sul Ross Center at the time of the accident, and also a City employee, testified that the City recognized that older people go in and out of the facility and need help because many of them have difficulty in getting around and some have poor eyesight. She acknowledged that an uneven area could cause trouble for an older person whereas some younger person might have no difficulty. Mrs. Dooley confirmed that one side of the crack was higher than the other, the crack went all the way through the sidewalk, and at the time of trial had still not been repaired.

Testimony showed that the City employed maintenance people who regularly took care of the outside of the Center, including maintaining the grass and shrubbery and sweeping the sidewalks. Mrs. Dooley testified that in her opinion there was no reason for the City's maintenance men not to have known about the crack from the time it first existed, and that the City's maintenance people should have reported same.

■ In the case at bar, the City was an abutting property owner in addition to its status as a municipality. Here the City is in the position of being an occupier, and Mrs. Haynes is in the status of an invitee. See *Adam Dante Corp. v. Sharpe* (Tex.1972) 483 S.W.2d 452, 454.

■ Appellant's first point of error asserts that the crack in question was "open and obvious" to Mrs. Haynes, to the end that she is charged in law with knowledge, realization, and appreciation of the danger, and therefore the City owed no duty as a matter of law to warn her of such condition of the sidewalk. We overrule this contention.

As we understand the recent decision in *Parker v. Highland Park, Inc.* (Tex.1978) Vol. 21, "The Texas Supreme Court Journal" page 188, opinion dated February 8, 1978, our Supreme Court has expressly abolished the "no duty" or "open and obvious" concept as a separate defense in all actions based on negligence. In the case at bar, the jury found the City guilty of negligence proximately causing Mrs. Haynes' injuries, and acquitted Mrs. Haynes of any negligence, and the legal or factual sufficiency

of evidence to support these findings have not been challenged by Appellant.

Aside from the foregoing, we overrule Appellant's first point of error for an additional reason: Here, Mrs. Haynes testified that she had no knowledge of the crack in the sidewalk before she fell, and this is undisputed.

■ Our Supreme Court has held that an occupier owes a duty to protect an invitee from a danger which is latent. *Massman-Johnson v. Gundolf* (Tex.1972) 484 S.W.2d 555, 556; *Coleman v. Hudson Gas and Oil Corp.* (Tex.1970) 455 S.W.2d 701.

■ In the case at bar, we are of the opinion that the crack in the sidewalk is a latent defect, and therefore we cannot say as a matter of law that such condition is open and obvious, and that Mrs. Haynes was charged with knowledge, realization, and appreciation of the danger. Appellant's first point is overruled.

Appellant cites *H. E. Butt Grocery Co. v. Israel* (Waco CA 1976) 544 S.W.2d 769, no writ, a venue "slip and fall" case as being similar in facts to the instant case. In *Israel*, we held the premises defect in question to be open and obvious, but the facts in *Israel* were in our opinion far different from those in the case at bar.

■ Appellant's second point asserts that the defect in question was trivial as a matter of law. We cannot agree with this argument, because the undisputed evidence shows that the crack was of such a nature that a person's heel could be caught in it, so as to bring about a fall.

Appellant further contends that special issues numbers 4 and 7 are merely repetitious of special issue No. 1. We overrule this contention.

The Plaintiff pleaded three theories of liability against the City. Evidence was presented upon the three theories, and special issues were submitted concerning same. The first two theories were based upon violations of ordinances of the City and the third was based upon common law negligence. In answer to Special Issue No. 1, the jury found that the sidewalk in question was in a "defective condition," which (in answer to No. 2) was a proximate cause of Plaintiff's injuries. The Waco City Ordinance in question here was Section 32–52 which read:

"Liability for Defective Sidewalk, Curb or Gutter.

"The abutting property owner or person enjoying the use of any property abutting on a sidewalk or curb or gutter that has become defective and has resulted in causing damages or injury as a result of such defective condition, shall be primarily liable in damages for any loss or damage sustained as a result of such defective condition."

In this connection, the City stipulated that it was an abutting property owner, and the evidence so showed.

Special Issues 3, 4, 5, and 6 were based upon an alleged violation of Waco City Ordinance, Section 32–53, which read:

"Duty to Keep Sidewalk and Curb in Safe Condition.

"It shall be the duty of any property owner or person making special use of any sidewalk or curb for purposes of ingress or egress for loading elevators, downspout drains or any other specific use of whatsoever kind or character to keep such sidewalk, parkway, curb and driveway abutting such property in a good and safe condition and free from any defects and hazards of whatsoever kind and character."

Special Issues 7, 8, 9, 10, 11, and 12 were based upon the theory of common law negligence. Special Issues Nos. 1, 4, and 7 were not repetitious of each other, but were respectively parts of three separate and distinct theories of recovery. As shown above, the jury verdict found the City to be liable to Mrs. Haynes on all three theories.

Appellant has other points and contentions, which we have carefully considered. We overrule all of same as being without merit.

Judgment of the trial court is accordingly affirmed.

AFFIRMED.